13095

CHICK SPRINGS WATER CO., Inc., v. STATE HIGHWAY DEPARTMENT

(157 S. E., 842)

April, 1930.

486

*Messrs. W. B. McGowan* and *Blythe & Bonham,* for appellants,

Messrs. *John M. Daniel, Attorney General,* and *Cordie Page* and *J. Ivey Humphrey, Assistant Attorneys General* and *Price & Poag,* for respondent,

March 18, 1931.

The opinion of the Court was delivered by MR. JUSTICE COTHRAN.

This is an action for damages resulting from the alleged negligent construction of a certain culvert, in the relocation of the highway between Greenville and Spartanburg. The circumstances, from the allegations of the complaint, appear to be as follows:

The plaintiff is the owner of a tract of land between the City of Greenville and the City of Greer, in Greenville County, on which is located a mineral spring, amusement park, and a bottling plant with machinery, appliances, and buildings used in connection therewith. The tract of land is drained through its middle, from west to east, by Lick Creek, a natural water course, which has always carried and drained the freshet waters of the watershed without damage

to plaintiff's property. During the year 1925, the defendant, pursuant to statutory authority, relocated and constructed highway No. 8, traversing the tract of land, placing the particular portion upon which was located the properties and amusements referred to on the west side of said highway; they had previously been located on the east side. In the construction of the highway, an embankment 30 or 40 feet in height was thrown up across the valley section of the tract, and a culvert was constructed through said embankment, for the purpose of carrying off the flow of the creek and the freshet waters thereof from time to time. It is alleged that the culvert was negligently constructed by the defendant, in that it was not of sufficient dimensions to discharge the volume of water which could and should have been anticipated during ordinary freshets; that the defendant was notified before the construction of the culvert that as proposed to be built it would not be of sufficient dimensions to meet the demands to which it would be subjected, and protest was made to the engineers of the defendant against the construction of the same according to the dimensions proposed; that on about September 26, 1929, there was a heavy rainfall in the immediate section of plaintiff's property and upon the watershed on which the property was located, not unprecedented in character; and that, as the result of the insufficient dimensions of the culvert, the water was impounded against the embankment and thrown back upon the property of the plaintiff, to its very serious damage.

The defendant interposed a demurrer to the complaint upon two grounds: (1) That it failed to allege that the plaintiff did not bring about the injury complained of by its own negligence or negligently contributed thereto; (2) that it failed to allege that a verified claim, as required by the Act of 1928, was filed with the State Highway Department.

The demurrer was heard by his Honor, Judge Townsend, who signed an order dated April —, 1930, sustaining the demurrer upon the ground thus stated:

"The only permission of the State to be sued for lands taken by the State Highway Department which has been called to my attention is that found in the Act of 1928, above referred to; and, as the plaintiff has failed to comply with the terms and provisions of that Act by a failure to file a notice of his claim or verified claim prior to suit with the State Highway Commission, his complaint fails to state a cause of action; and on that ground the demurrer is sustained."

The plaintiff·resisted the demurrer upon the ground:

" * * * That the acts of the defendant as aforesaid constitute a taking of the private property of the plaintiff by the defendant, a political subdivision of the State, for public purposes, without just compensation being made therefor, and in violation of the provisions of the Constitution of South Carolina and of the Constitution of the United States, which provide that·private property shall not be taken for a public use without just compensation being made therefor."

This contention was overruled by his Honor. From his order sustaining the demurrer and dismissing the complaint, the plaintiff has appealed, raising the sole question "whether the plaintiff whose land has been taken by the State Highway Department has no other remedy to obtain compensation than the Act of 1928" (Appellant's brief).

We shall draw quite copiously from the very clear and unanswerable argument of counsel for the plaintiff, in sustaining their position that the plaintiff is not confined to the terms of the Act of 1928, 35 Stat. 2055, for relief, but may recover upon the ground that the negligent injury to its property constitutes a taking for which under the Constitution it is entitled to compensation.

I. The Act of 1928 is not applicable.

The authorities are unanimous that the flooding and injuring of property by the negligent impounding of a natural water course is a "taking" under the constitutional provision.

In 10 R. C. L., p. 70, Sec. 61, it is said:

"*Covering Land with Water or Earth.*—There may be a taking of property in the constitutional sense although there has been no actual entry within its bounds and no artificial structure has been erected upon it. When a public agency acting under authority of statute uses land which it has lawfully acquired for public purposes in such a way that neighboring real estate, belonging to a private owner, is actually invaded by superinduced additions of water, earth, sand or other material so as effectually to destroy or impair its usefulness, there is a taking within the meaning of the constitution."

The cases in our own Court have been decided upon the same principle: *Faust v. Richland County,* 117 S. C., 251, 109 S. E., 151; *Derrick v. City of Columbia,* 122 S. C., 29, 114 S. E., 857; *Kneece v. City of Columbia,* 128 S. C., 375, 123 S. E., 100; *McNinch v. City of Columbia,* 128 S. C., 54, 122 S. E., 403; *Wilson v. City of Laurens,* 134 S. C., 271, 132 S. E., 590.

Is plaintiff to be denied the compensation guaranteed to him by the Constitution unless he can bring himself within the Act of 1928? Such was the decision of the trial Judge.

Prior to the Act of 1928, the only remedy provided for a person injured by a defect in a highway was given by Code, Vol. 3, Section 2948, which provided a remedy in a suit against the county. There was no remedy where such an injury was caused by the State Highway Department. The Act of 1928, which amended and superseded the Act of 1925 (Act April 14, 34 St. at Large, 287), *U. S. Casualty Co. v. State Highway Department,* 155 S. C., 77; 151 S. E., 887, gave such a remedy. A comparison of this Act with the county statute shows that the same right of action was given by both, viz.: the right to a person using the highway for the purpose of travel to recover for an injury to person or property, caused by a defect in the highway. Both statutes required the person injured, as a condition of his recovery, to negative contributory negligence. The Act of 1928 required him to file a claim, and limited recovery to $1,500.

Obviously the Act was not intended to apply to a person seeking compensation under the Constitution for a taking of his property by the State; plaintiff admitted that the statute was not applicable, and that his action was not brought under it.

> Since the Act of 1928 does not apply to this case, the remedy and conditions expressed in the Act are also inapplicable.

II. Article 1, Section 17, of the Constitution, is self-executing.

The section of the Constitution referred to reads as follows:

"Private property shall not be taken for private use without the consent of the owner, nor for public use without just compensation being first made therefor."

There are statutes providing for condemnation by counties, cities, railroads, school districts, utilities, etc., but there is no statutory provision for condemnation by the State where it has taken property.

Section 10-A of the Act to provide a State system of hard-surfaced roads, 33 St. át Large, 1193, 1216, gives to the State Highway Department the same power to condemn lands for rights-of-way as are conferred by law upon county commissioners, but this Act limits the power of condemnation to the acquisition of rights-of-way and materials, and has no application to a taking outside the limits of the right-of-way, as in cases like the present one, where the taking is the result of impounding of the waters of a stream causing permanent injury to property, as is shown by the *Faust* and other cases in which the right to maintain actions at law has been sustained against counties and cities where there was a taking under circumstances similar to the case at bar.

The authorities hold that the constitutional provision is self-executing.

"It is within the power of those who adopt a constitution

to make some of its provisions self-executing, with the object of putting it beyond the power of the Legislature to render such provisions nugatory by refusing to pass laws to carry them into effect; and where the matter with which a given Section of the Constitution is divisible, one clause thereof may be self-executing and another clause or clauses may not be self-executing. Constitutional provisions are self-executing when there is a manifest intention that they should go into immediate effect and no ancillary legislation is necessary to the enjoyment of a right given and the enforcement of a duty imposed." 12 C. J., 729.

"A constitutional provision against taking private property for public use without just compensation therefor is self-executing, even though the method of ascertaining such compensation is left for Legislative determination. When the Constitution forbids damage to private property, and points out no remedy and no statute affords one for the invasion of the right of property thus secured, the common law, which provides a remedy for every wrong, will furnish the appropriate action for the redress of such grievance." 12 C. J., 732.

"Const. Art. 2, Sec. 21 (Ann. St., 1906, p. 148), providing that private property shall not be taken for public use without just compensation is self-enforcing and requires no legislation to give it effect. Where a statute or the Constitution creates a right, but is silent as to the remedy, the party entitled to the right may resort to any common law action which will give him adequate redress." *State v. Taylor,* 224 Mo., 393; 123 S. W., 892, 895.

"It was the design of the amendment to our Constitution under consideration to remove an existing mischief, viz., the damaging of private property for public use without just compensation, and a constitutional provision should never be construed as dependent for its efficacy and operation upon legislative will. 6 A. & E. Ency. L., 913, and authorities cited. So that when the provision of a Constitution, as does ours, no less than the provision in the Constitutions of the

States of West Virginia and Illinois, forbids damage to private property, and points out no remedy, and no statute affords one, for the invasion of the right of property thus secured, the provision is self-executing, and the common law, which provides a remedy for every wrong, will furnish the appropriate action for the redress of such grievance." *Swift & Company v. City of Newport News,* 105 Va., 108; 52 S. E., 821, 824; 3 L. R. A. (N. S.), 404.

"Where the Constitution forbids a damage to the private property of an individual, and points out no remedy, and no statute gives a remedy, for the invasion of his right of property thus secured, the common law, which gives a remedy for every wrong, will furnish the appropriate action for the redress of his grievance. We think therefore the declaration showed a good cause of action, and the demurrer thereto was properly overruled." *Johnson v. City of Parkersburg,* 16 W. Va., 402; 37 Am. Rep., 779.

In the case of *Great Northern R. Co. v. State of Washington,* 102 Wash., 348; 173 P., 40, 42; L. R. A., 1918E, 987, the State of Washington was sued by the railroad company for injury to its property, resulting from the construction of a State highway. The action was based on the constitutional provision of the State of Washington prohibiting the taking or damaging of private property for public uses without just compensation. The State of Washington interposed a demurrer to the suit, similar to the one in the case at bar, contending that the State was immune from suit. The demurrer was overruled, and it was held that the action would lie.

In said case, portions of the opinion are as follows:

"It is contended by the State that a suit against it to recover for damages will not lie, and that the damages herein involved is not for a public use, within the meaning of the constitutional provision requiring compensation. We cannot accede to this contention; for, if the State could have condemned the right to inflict the necessary damage or invade

plaintiff's property, its failure to so condemn is not an excuse to deny plaintiff's recovery. * * * When taking private property for a public use, the State acts in its sovereign capacity. * * * 'It goes not as a trespasser, inspired by selfish or unlawful motive, but as one taking without malice or intent to do wrong, and presumptively for the public good. It cannot put on the cloak of a tort-feasor under the statute if it would, it cannot plead a willful wrong to defeat a just claim.' * * *

"In our opinion, the theory that property rights are ever to be sacrificed to public convenience or necessity without just compensation is fraught with danger, and should find no lodgment in American jurisprudence. If the acts which caused the injury were done under and in consequence of the direction of the State, then the State is to be regarded as the superior and responsible as such although it does the work by contract and by the direction of its duly authorized officers. The plaintiff's complaint states a cause of action under Article 1, Section 16 of our Constitution, and the State's demurrer was properly overruled."

"A constitutional provision is 'self-executing,' when no legislation is required to give effect to it." *Becker v. Atlantic Coast Line R. Co.*, 128 S. C., 131; 121 S. E., 476

"Const. Art. 8, Sections 5, 7, providing cities may acquire water-works and provide for payment therefor, are self-executing." *Paris Mt. Water Co. v .City of Greenville*, 110 S. C., 36, 96 S. E., 545.

"The general presumption of law is that all constitutional provisions are self-executing, and are to be interpreted as such, rather than as requiring further legislation, for the reason that, unless such were done, it would be in the power of the Legislature to practically nullify a fundamental of legislation. 6 R. C. L., p. 58; Black on Interpretation of Laws, p. 21." *McColl v. Marlboro School Dist.*, 143 S. C., 120, 124; 141 S. E., 265; *Brice v. McDow et al.*, 116 S. C, 324; 108 S, E,, 84, 87.

From the above authorities it is indisputable that the constitutional provision quoted is self-executing, and, the Legislature having enacted no statute providing for the compensation guaranteed by the Constitution applicable to the facts of this case, an action at law will lie to recover such compensation.

The basis of the decision of the trial Judge was that this action is in effect against the State, and in no case can the State be sued without its consent. It is true that an action against the State Highway Department is actually against the State itself, *U. S. Casualty Co. v. State Highway Department, supra,* and it is also true that ordinarily a State cannot be sued without its consent. There is, however, one important exception to the rule: In actions against the State for compensation for property taken, the Constitution itself gives consent for the State to be sued, and, where the Constitutional Convention has given such consent, no act of the General Assembly is needed for that purpose, nor is it in the power of that body to deny it, for "a constitutional provision shall never be construed as dependent for its efficacy and operation upon the legislative will." *Swift & Co. v. City of Newport News, supra.*

As to the case of *Lowry v. Thompson,* 25 S. C., 416; 1 S. E., 141, upon which the trial Judge predicated his opinion, it is sufficient to say that that was an action in claim and delivery to recover certain bonds from the State treasurer, and not an action to obtain compensation for property taken by the State for a public use.

The true principle applicable to cases of this kind is stated in the opinion of Judge Johnson, unanimously adopted as the opinion of the Court in *Randal v. State Highway Department,* 150 S. C., 302; 148 S. E., 57, 58, as follows:

"In this State neither the commonwealth, nor any of its political subdivisions, is liable in action *ex delicto* unless made liable by express enactments of the General Assembly, except where the acts complained of, in effect, constituted a

taking of private property for public use without just compensation. *Young v. City Council of Charleston,* 20 S. C., 116; 47 Am. Rep., 827; *Mullinax v. Hambright,* 115 S. C., 22; 104 S. E., 309; *Faust v. Richland County,* 117 S. C., 251; 109 S. E., 151; *Derrick v. Columbia,* 122 S. C., 29; 114 S. E., 857; *Kneece v. Columbia,* 128 S. C., 375; 123 S. E., 100."

The trial Court, in sustaining the demurrer, held that the only remedy which the plaintiff would have under the facts of this case would be to petition the Legislature for leave to sue, "just as in case of all other claims against the State." This ruling of the Court does nothing more than suggest that plaintiff has no remedy for his wrong, for this Court has held in the case of *Sirrine v. State,* 132 S. C., 244; 128 S. E., 172, that an Act giving to an individual the right to sue the State is unconstitutional as special legislation.

III. This action is maintainable under the principles upon which *Hopkins v. Clemson College; Faust v. Richland County,* and other like cases are decided.

In *Hopkins v. Clemson College,* 221 U. S., 636; 31 S. Ct., 654, 656; 55 L. Ed., 890; 35 L. R. A. (N. S.), 243, the plaintiff sued for damages to his farm resulting from the college having built a dyke, which forced the waters of Seneca River across his land causing damage. The Supreme Court of the United States reversed the decision of the State Supreme Court which had dismissed the Bill upon the ground that the State was a necessary party, and had not consented to be sued. The following excerpts from the opinion of the Court are applicable:

"Neither a State nor an individual can confer upon an agent authority to commit a tort, so as to excuse the perpetrator. * * *

"For protecting the bottom land, the college, for its own corporate purposes and advantages, constructed the dyke. In so doing it was not acting in any governmental capacity. The embankment was in law similar to one which might

have been built for private purposes by the plaintiff on the other side of the river. If he had there constructed a dyke to protect his farm, and in so doing had taken or damaged the land of the college, he could have been sued and held liable. In the same way, and on similar principles of justice and legal liability the college is responsible to him if, for its own benefit, and for protecting land which it held and used, it built a dyke which resulted in taking or damaging the plaintiff's farm. * * * These suggestions, though made in a plea to the jurisdiction, afford no reason why the college should be granted immunity from suit, when it is claimed that, in violation of the Constitution, it has taken private property for its corporate purposes without compensation."

Mr. Justice Lamar further said in the *Hopkins case:*

"If the State had in so many words granted the college authority to take or damage the plaintiff's property for its corporate advantage without compensation, the Constitution would have substituted liability for the attempted exemption. But the State of South Carolina passed no such act and attempted to grant no such immunity from suit as is claimed by the college."

Concerning this statement of high authority, it may well be said: If the State had, in so many words, granted the Highway Department authority to take or damage the plaintiff's property for its advantage without compensation, the Constitution would have substituted liability for the attempted exemption. But the State of South Carolina passed no such Act and attempted to grant no such immunity from suit as is claimed by the highway department.

The doctrine of the *Hopkins* case has been uniformly applied by this Court in cases of the character of the case at bar.

In *Faust v. Richland County,* 117 S. C., 251; 109 S. E., 151, a demurrer was overruled to a complaint which alleged:

"The defendant while making repairs to said highway carelessly and negligently and in utter disregard of rights

of plaintiff filled in the drainage ditches along the side of the road in front of plaintiff's house and elevated the road bed so as to cause the rain which falls upon the roads and lots adjacent thereto to accumulate in great volume and flow with great force across plaintiff's yard and under his house and through his premises thereby damaging said premises."

The opinion of the Court *en banc,* affirming the Court below, was rendered by Chief Justice Gary, who said at page 255 of 117 S. C.; 109 S. E., 151:

"But there is even a stronger reason why the demurrer was properly overruled, to wit: The overflowing of the plaintiff's lands in the manner alleged in the complaint was in violation of the constitutional provisions prohibiting the taking of property without due process of law, and likewise without just compensation being first made."

In the *Faust case,* the writer of this opinion dissented, endeavoring to differentiate it from the *Hopkins case,* principally upon the ground that in the action in the *Faust case* the defendant had the right to divert surface water, and that there was, therefore, no taking, but expressed, at page 289 of 117 S. C.; 109 S. E. 151, 163, his accord with the doctrine of the case in the following words:

"What we recognize to be the doctrine of the *Hopkins case* is that where the tort was committed by or under the specific direction of the corporation, it cannot claim immunity from suit or immunity from liability, for the reason that neither the State by statute nor the Courts by decision can authorize a political subdivision or an agent of the State to damage the property of a citizen without compensation."

In *Kneece v. City of Columbia,* 128 S. C., 375; 123 S. E., 100, a judgment in favor of the plaintiff for damages caused by noxious and disagreeable odors consequent upon the operation of an incinerator was sustained upon the authority of the *Faust case.*

In *Wilson v. Laurens,* 134 S. C. 271; 132 S. E., 590, 591, plaintiff recovered judgment against the city for damages

caused by diverting surface waters upon his land. In sustaining the judgment, the Court said:

"The plaintiff's cause of action is maintainable under the cases of *Hopkins v. Clemson College,* 31 S. Ct., 654; 221 U. S., 636; 55 L. Ed., 890; 35 L. R. A. (N. S.), 243; *Faust v. Richland [County],* 109 S. E. 151; 117 S. C., 251; *Derrick v. Columbia,* 114 S. E., 857; 122 S. C., 29; *Kneece v. Columbia,* 123 S. E., 100; 128 S. C., 375; *Mc-Ninch v. Columbia,* 122 S. E .,403; 128 S. C., 54."

In *Randal v. State Highway Department,* 150 S. C., 304; 148 S. E., 57, it was held that the Act of 1925 did not give a cause of action for death caused by alleged negligence of the defendant in not providing plaintiff with a safe place to work; the Court, discussing the different statutes affecting liability of the State agencies for injuries caused by defects in highways, lays down the rule already quoted, deduced from all the authorities, that, where the acts complained of in effect constituted a taking of private property for public use without just compensation, immunity from suit does not extend to either the commonwealth or any of its political subdivisions. This opinion was concurred in by the entire Court. This is the exact question at issue in this case, and is conclusive of plaintiff's right to maintain this action.

The only distinction drawn by the trial Judge between this and the cases hereinabove discussed is stated by him as follows:

"I hold these cases are distinguishable from the one now before the Court on the ground that they were against public corporations, which were made by statute liable to suit, while the present case is in effect one against the State itself, and it is not liable to suit except where it has expressly given permission and upon the terms stated by it in the grant of permission."

No valid distinction can be drawn between cities, counties, and other political subdivisions, referred to in the *Faust* and

other cases, on the one hand, and the State Highway Department, on the other. All are agencies of the State, and all derive their immunity from the same source, the State, and upon the ground that, being agencies of the State, they are in effect the State itself. Counties, cities, and other political subdivisions are held liable where they take property, not upon the ground that they are authorized by statute to be sued, but because of the constitutional provision requiring compensation to be made for such taking. This protection is afforded to the humblest citizen by the Constitutions of the State and the United States, and neither government can itself or by any statute or through any agency take property without paying compensation. "Immunity from suit" cannot avail in this instance, and, if no statute exists, liability still exists, because as to this provision the Constitutions are self-executing.

To hold otherwise would be to say that the Constitution itself gives a right which the Legislature may deny by failing or refusing to provide a remedy. Such a construction would indeed make the constitutional provision a hollow mockery instead of a safeguard for the rights of citizens.

No Court has ever applied the doctrine of immunity from suit to cases like the one at bar, nor can they, for to do so would absolutely annul the provision of Article 1, Section 17, of the Constitution. On the contrary, this Court in the *Faust case* and in those following it has expressly held there is no such immunity.

As a matter of fact, the Court went further in the *Faust case* than the plaintiff in this case asks it to go; for in it the Court held that, notwithstanding the right of the county to fight back surface water from its property, in the exercise of a time-honored right, it could only do so without injuring the plaintiff's property. In the case at bar there is no suggestion that the defendant was exercising a legal right.

IV. If the foregoing positions are not correct, plaintiff has no remedy, its property has been taken without due process

of law, and it has been denied the equal protection of the laws.

It is inconceivable but that, where the Constitution has prescribed in such unmistakable terms that the property of no citizen shall be taken for a public use without just compensation will be made whether the taking be by a political subdivision or by the State itself.

It would indeed be a travesty upon justice if the State should give by its Constitution a right and then deny liability upon the ground that its Legislature had not provided a remedy by statute waiving immunity.

"Due provision must be made for the assessment of damages in some adequate proceeding in the nature of a judicial inquiry and the owner shall have a fair and full opportunity to be heard on the question of compensation to be awarded * * * and finally just compensation must be awarded, for if none is given, or inadequate damages are allowed, there is a want of due process of law." Black on Constitutional Law (3rd Ed.), 586.

"In every government there is inherent authority to appropriate the property of the citizen for the necessities of the State, and constitutional provisions do not confer the power, though they generally surround it with safeguards to prevent abuse. The restraints are that, when specific property is taken, a pecuniary compensation, agreed upon or determined by judicial inquiry, must be paid." *Chicago B. & Q. R. Co. v. City of Chicago,* 166 U. S., 226, 17 S. Ct., 581, 586, 41 L. Ed., 979.

"And in this there is a natural equity which commends it to every one. It in no wise detracts from the power of. the public to take whatever may be necessary for its uses; while, on the other hand, it prevents the public from loading upon one individual more than his just share of the burdens of government, and says that when he surrenders to the public something more and different from that which is exacted from other members of the public, a full and just equivalent

shall be returned to him." *Monongahela Nav. Co. v. United States,* 148 U. S., 312, 13 S. Ct., 622, 626, 37 L. Ed., 463. . The provision limiting the amount of compensation to $1,500 shows either that the statute does not apply to an action of this kind, or else affords another reason for applying the due process clause, for, if the Constitution provides that "just" compensation shall be made, it is not in the power of the Legislature to fix $1,500 as the extreme limit of just compensation. As is well said in *Monongahela Nav. Co. v. United States,* 148 U. S., 312, 13 S. Ct., 622, 627, 37 L. Ed., 463:

"The right of the Legislature of the State by law to apply the property of the citizen to the public use, and then to constitute itself the Judge of its own case, to determine what is the 'just compensation' it ought to pay therefor, or how much benefit it has conferred upon the citizen by thus taking his property without his consent, or to extinguish any part of such 'compensation' by prospective conjectural advantage, or in any manner to interfere with the just powers and province of Courts and juries in administrating right and justice, cannot for a moment be admitted or tolerated under our constitution. If anything can be clear and undeniable, upon principles of natural justice or constitutional law, it seems that this must be so."

For these reasons the order sustaining the defendant's demurrer should be reversed and the case remanded to the Circuit Court for further proceedings. It is so ordered.

MR. CHIEF JUSTICE BLEASE, MR. JUSTICE STABLER and MR. ACTING ASSOCIATE JUSTICE MENDEL L. SMITH, concur.

MR. JUSTICE CARTER (dissenting).

For a statement of this case I adopt the agreed statement of counsel contained in the transcript of record, as follows:

"This action was commenced on the 17th day of December, 1929, by service of a summons and complaint on the State Highway Department, asking for a judgment for the

sum of Ten Thousand Dollars ($10,000.00), which was later amended for the sum of Thirty Thousand Dollars ($30,000.00). The complaint was also later amended so as to allege that the State Highway Department denied the plaintiff's right to compensation. The action was based upon the alleged negligence of the Highway Department in the careless construction of a culvert under the State Highway known as the National Highway between Greenville and Greer; the alleged negligence being that the culvert was not large enough to drain the valley in which the plaintiff's property was located, thereby causing the water during a heavy rainfall on September 26, 1929, to overflow the plaintiff's land and permanently injuring same. The plaintiff alleged that the acts of the defendant amounted to a taking of private property of the plaintiff for public uses without just compensation being made therefor and without due process of law as required by Article 1, Sections 5, 8 and 17 of the Constitution of the State of South Carolina, and Article 1, Section 10 of the United States Constitution, and Articles 5 and 14 of the Amendments thereto. To this complaint, the defendant filed a demurrer which was heard by his Honor, Judge W. H. Townsend, at the April, 1930, term of the Court of Common Pleas for Greenville County, who signed an order sustaining the demurrer and dismissing the complaint. Within the time allowed by law, the plaintiff served upon the defendant notice of intention to appeal to the Supreme Court from the order of Judge Townsend, sustaining the demurrer and dismissing the complaint."

For the reasons stated in the order of Judge Townsend, in sustaining the demurrer, the exceptions should be overruled and the order appealed from affirmed.